HOBART BRINSMADE, ADMINISTRATOR AND TRUSTEE, *vs.* ELIZA J. BEACH ET ALS.

Third Judicial District, Bridgeport, October Term, 1922.
WHEELER, C. J., CURTIS, BURPEE, KEELER and WEBB, Js.

A general residuary clause in a will indicates a clear intention of the testator to dispose of all his property; and the mere fact that such disposition gives the residue to charities instead of to the testator's relatives or heirs at law, is of no legal significance, since the question for the court to determine is the construction of the will as made, and not the making of a more desirable or just disposition of the property.

A gift of the residue of the testator's estate, equally, to the "charitable societies" previously named in his will, although in form an absolute bequest, is presumptively, and in the absence of an expressed intent to the contrary, subject to the same uses, purposes and conditions, as those theretofore prescribed in the will for the respec-

tive legacies given to each of them. This rule does not apply, however, to a bequest to an individual.

Under our statute of charitable uses, General Statutes, § 5081, there is no distinction between a charitable use and a religious use.

Extrinsic evidence is admissible to identify the legatee intended by the testator, if the description used in the will is not sufficiently clear.

Under our statute of charitable uses (§ 5081) an unincorporated or voluntary association can take a testamentary gift of real or personal estate for charitable purposes.

A provision of a will making a gift of which the interest is to be used yearly to fit out missionary boxes, expresses a charitable purpose with sufficient definiteness to be carried out.

A testatrix gave her daughter the life use of her homestead and of $5,000, and then made specific gifts to named charitable societies, among which were the "Congregational Church Society at T" (by which she meant an ecclesiastical corporation commonly designated as such church but actually named "The Church of Christ in T"), and the Ladies Society of S (meaning the unincorporated Ladies Sewing Society of the Congregational Church of S, which was later and after the testatrix's death known as the Women's Missionary Society of that church). The interest from the former gift was to be appropriated to the support of the gospel in said society; that from the latter, to be used yearly to fit out missionary boxes. After pecuniary legacies to her heirs and others, and a provision that, if the legacies could not be paid in full at her death, the balance should be paid at her daughter's death, she added a residuary clause, duly executed although appearing subsequent to the attestion clause, giving all her residue equally to the "above named societies." At the daughter's death the estate amounted to about $10,000, of which about one half consisted of the proceeds realized from the sale of the homestead during the existence of the life estate. *Held* that all the residuary estate passed to the societies named, including the church corporation and the voluntary missionary society, subject to the same uses and conditions as were provided for the specific bequests to such societies.

A sale of real estate by order of court before the termination of a life estate therein, does not change the nature of the proceeds: under the statute (Chap. 122 of the Public Acts of 1921) they are still to be divided or distributed as the realty would have been, had it not been sold.

Argued October 27th—decided December 11th, 1922.

SUIT to determine the construction of the will of Catherine S. Booth of Stratford, deceased, brought

to and reserved by the Superior Court in Fairfield County, *Webb, J.,* upon the facts alleged in the complaint, for the advice of this court.

Catherine S. Booth, a resident of Stratford, died November 9th, 1892, seized of both real and personal estate. On July 30th, 1891, she made a will, which was duly probated December 3d, 1892. The will provided as follows: Clause one, for the payment of her debts and funeral charges, and a bequest of $100 for the care of the burial plot of the testatrix and the graves of Eli Booth and family; clause two, for the use by her adopted daughter Mary Ann Devine, during her life, of the homestead of the testatrix and of $5,000; clause three reads: "I give and bequeath to the Congregational Church Society at Trumbull, Connecticut, the sum of Five Hundred Dollars ($500) the same to be safely invested and the income therefrom to be appropriated to the support of the gospel in said Society. I give and bequeath to the American Bible Society formed in New York in the year 1816 the sum of Two Hundred Dollars ($200) to be applied to the charitable purposes of said Society. I give and bequeath to the Home Mission Society of New York, the sum of Two Hundred Dollars ($200) to be applied to the uses and purposes for which said Society was organized. I give and bequeath to the Womans Board of missions the sum of Two Hundred dollars ($200) to be applied to the Mission purposes set forth in the act of incorporation passed by the legislature of Massachusetts in the year 1869. I give and bequeath to the American Tract Society, instituted in the City of New York, the sum of Two Hundred dollars, ($200) to be applied to the charitable uses and purposes of said Society. I give and bequeath to the Ladies Society of Stratford two hundred dollars the interest to be used yearly to fit missionary boxes." Clause four gave to

Edwin Freeman, an employee, $100.  Clause five gave to each of her sisters, Cornelia N. Judson and Eliza J. Beach, and each of her brothers, Cyrus N. Brinsmade and Lewis Brinsmade, $200, and to Harriet M. Brinsmade, daughter of Frank Brinsmade, a nephew, $100, and to Dora Brinsmade and Arthur Brinsmade, children of Charles Brinsmade, a nephew, each $100.  Clause six reads: "In case there should not be money enough at the time of my decease belonging to my Estate to pay all the above legacys then it is my will that my Executors shall pay them pro rata as far as there is money to pay them and when Mary Ann Devine is done with it to pay the balance due if there is any." After the attestation clause, appeared two provisions duly witnessed before the execution of the will and found by the Court of Probate to be a part of the will, one of which reads as follows: "All the residue of my property I bequeath equally to the above named charitable societies, should there be any."  The pecuniary legacies given in the first five clauses of this will were paid in full, so that the provisions of this clause were and are inoperative.  The heirs at law and next of kin of the testatrix living at her death were: Eliza J. Beach, a sister of the testatrix and descendants of her sister Cornelia and her brothers Cyrus N. Brinsmade, Lewis Brinsmade and James D. Brinsmade.  By the term "The Home Missionary Society of New York," in the third clause of the will, the testatrix intended to describe the corporation then and now existing under the laws of the State of New York and having its principal office at 287 Fourth Avenue, New York City, whose corporate name was then "The American Home Missionary Society," but has since been legally changed to "The Congregational Home Missionary Society."  The American Bible Society, the Congregational Home Missionary Society, the Woman's

Board of Missions and The American Tract Society, are all corporations organized and operated exclusively for charitable and benevolent purposes. "There exists and for a long time prior to the date of said will, there had existed, in the Town of Trumbull, Connecticut, an ecclesiastical corporation, incorporated in 1814 under the name of 'The Church of Christ in Trumbull,' which corporation by custom had come to be commonly designated as 'The Congregational Church of Trumbull,' and by the terms of the third section of her will and the residue clause in said will, the testatrix intended by the words 'The Congregational Church Society of Trumbull, Connecticut' the ecclesiastical corporation whose name by original incorporation as aforesaid was 'The Church of Christ in Trumbull,' which has for many years been known and designated as 'The Congregational Church of Trumbull.'" At the time of the death of the testatrix, and at the time when her will was executed, there was in existence in Stratford a society of women known as "The Ladies Sewing Society," connected with the Congregational Church in that town. The testatrix was for many years the president of this society, and many of its meetings were held at her residence, and she had often stated that she intended to leave a bequest to it. The testatrix was a member of said Congregational Church from 1843 to her death. This Society is now known as the Women's Missionary Society of the Congregational Church, although certain of its funds are carried in the name of the Ladies' Sewing Society of Stratford. There was not at the execution of the will, nor has there been since, any society resembling "The Ladies' Aid Society of Stratford," with the exception of said "The Women's Aid Society," which was organized in 1900, nearly eight years after the decease of the testatrix. The fitting up of missionary boxes, that is

to say, boxes containing clothing and other useful articles for the families of missionaries, is a usual mode of assisting in the support of missions and missionary societies, and during the lifetime of the testatrix it was customary for The Ladies' Sewing Society (now The Women's Missionary Society of the Congregational Church) to fit up and send such boxes, and this custom continues to the present time. The objects of this Society are the making, and the securing by gift, of clothing and other articles for missionaries and other needy or worthy persons, and the collection and giving of funds for this purpose. By the term "The Ladies Society of Stratford" the testatrix intended to describe the "Women's Missionary Society of the Congregational Church." On December 6th, 1921, Mary Ann Devine died, and there is on hand for distribution personal property consisting of stocks, bonds and cash of the present market value of about $10,300, of which about $5,000 represents the principal of the above described trust fund and the remainder represents the proceeds of the sale of the homestead made on August 1st, 1918, by the administrator by order of the Court of Probate.

The questions reserved for advice are the following: *First.* Is the personal property now on hand for distribution, as described in paragraph nine above, to be regarded as intestate estate, and to be distributed to the heirs at law of Catherine S. Booth, or is the same to be considered part of the residuary estate, and to be distributed among the several "charitable societies," as provided in the last clause of said will? *Second.* If said personal property is to be distributed among said charitable societies, is the Congregational Church Society of Trumbull, Connecticut, included in the term, "charitable society," and is said society to share in such distribution? *Third.* Is the Women's Aid

Society of said Stratford described with sufficient definiteness and accuracy by the term "The Ladies Society of Stratford," so that said Society may receive any portion of said residue to which it may be entitled, and is said Society included in the term "charitable society," and entitled to share in the distribution of the residue? *Fourth.* If said Women's Aid Society is entitled to a share of said residue, is said share to be used for the general aims and purposes of said Society, or is such use restricted to fitting out missionary boxes as provided in the case of the pecuniary legacy to said Society given in the third clause of said will, and if such use is so restricted, is the purpose so designated a sufficiently charitable purpose to be carried out?

*Louis K. Gould* and *Robert H. Gould,* for the plaintiff.

*Samuel F. Beardsley,* for the defendants Eliza J. Beach *et als.*

*Epaphroditus Peck,* for the defendants the Congregational Home Missionary Society *et als.*

*William H. Comley,* for the defendant the Congregational Church of Trumbull.

*Sanford Stoddard,* for the defendant the Women's Missionary Society of the Congregational Church.

WHEELER, C. J. The first question for our advice is whether the personal property of this estate now in hand, and in amount about $10,300, is intestate estate and to be distributed to the heirs of the testatrix, or is a part of the residuary estate and to be distributed to the charitable societies named in the third clause of the will. Counsel for the heirs argues that the true intent of the will as found upon examination of it in its entirety, indicates that the remainder in the property

of which Mary Ann Devine had the life use and which is the personal property of this estate ready for distribution, was not disposed of by the will and therefore is intestate estate. To the primary objection that this construction, leading to partial intestacy, violates a fundamental rule of testamentary construction, is interposed the rule of law that heirs at law will not be disinherited unless on so strong a probability that an intention to the contrary cannot reasonably be supposed. *Peckham* v. *Lego,* 57 Conn. 553, 559, 19 Atl. 392. The testatrix intended the property of which Mary Ann Devine had the life use, to remain intact until her decease; for in clause six she provides that in case the estate cannot at once pay the pecuniary legacies in full, the balance due on them shall be paid when Mary Ann Devine is done with it, that is, when her life estate has ended. Clause six does not admit of a different construction. Counsel urge that the residuary clause should have immediately followed clause six; that having provided for the contingency of the estate being unable to pay the pecuniary legacies in full, the testatrix contemplated the reverse contingency,— that there might be a balance in the estate after paying the pecuniary legacies, and thereupon provided that such balance should be equally divided among the charitable societies named in the will. The parties agree that the words in the residuary clause of the will, "should there be any," should be transposed to follow the word property, which they modify, so that the clause would read: "All the residue of my property, should there be any, I bequeath equally to the above named charitable Societies." If the word "residue" does not mean the balance of the estate remaining after the pecuniary legacies are paid, then counsel for the heirs say the words in this clause, "should there be any," must refer to the contingency of there being

any of the remainder of the trust estate left, when it amounted to upward of $10,000 and these legacies were only $2,800, and of this the testatrix must be presumed to know. Such a construction leads to folly, they say. And it not only deprives the heirs of further interest in the estate contrary to a rule of construction of largest authority, but five of the six charitable societies will each receive an amount approximately nine times as large as the original legacy given them in the will, and nine times the share of any one of the heirs. The glaring injustice of depriving the heirs of this estate and giving it to these charitable societies which counsel inveigh against, if it in fact existed, could not justify the transposition of the residuary clause from its place in the will to a position following clause six, and then substituting for the word "residue" in this residuary clause the word "balance," and then construing the words "all the residue of my property" to mean the balance of the estate not required to pay the pecuniary legacies. The reservation calls for the construction of the will as made, not the making of a more desirable or just will. The construction claimed would leave intestate the greater part of the estate of the testatrix. From the beginning this court has avoided a construction which would lead to this result unless the terms of the will plainly prevented its avoidance. *Warner* v. *Willard,* 54 Conn. 470, 472, 9 Atl. 136. The residuary clause purports to dispose of all the estate of the testatrix undisposed of, and the fact that the testatrix has made a general residuary clause indicates clearly her purpose to dispose therein of every part of her estate undisposed of. *Hartford Trust Co.* v. *Wolcott,* 85 Conn. 134, 139, 81 Atl. 1057. These presumptions of law are rebuttable by the provisions of the will which show an intention contrary to these rules of construction. We can find nothing in the will

which supports the claim that the testatrix's intention is at variance with these general rules of construction. Next to her provision for her adopted daughter, came her church and the charitable societies she was interested in, and then came her employee and her relatives to whom she gave specific legacies and secured to each their full legacy. She nowhere manifests any further desire to benefit her relatives. She does manifest a desire to benefit these charitable societies, and the residuary clause in which she makes these additional bequests is unmistakable in this purpose.

The second question is, whether the Congregational Church Society of Trumbull is included in the term "charitable societies" in the residuary clause, and is to share in the distribution of the personal property. The devises and bequests in the residuary clause, of the residue to the "above named charitable societies," are for charitable purposes. They are absolute gifts in form. Clause three of the will describes, as to two of the legatees, the purposes, uses and conditions which restrict their pecuniary legacies. We think it will best promote the testatrix's intention to hold that the residuary devises and bequests going to these "charitable societies" are restricted to the purposes, uses and conditions restricting the bequests in clause three. When a bequest is given for a charitable use for named purposes and uses and restricted by named conditions, and later the legatee is given the whole or an aliquot part of the residue, and in form an absolute gift, the presumption, in case the will does not show a contrary intention, will be that the testator intended the residue so given to be subject to the same purposes, uses, and conditions as the earlier bequest. The rule announced in *Colt* v. *Hubbard*, 33 Conn. 281, 288, as applicable to the case of an individual, has no relation to the case of a bequest or devise for a charitable use. The be-

quest to this society in clause three of the will provided that it be invested and the income "appropriated to the support of the gospel in said Society." We cannot conceive that the testatrix intended the bequest and devise of the residue to be taken by the Society upon any terms other than those stated in clause three. The testatrix would not give the use of $500 to this Society in clause three and at the same time give outright to the Society through the residue four times the original bequest. The "Church Society" comes within the term "charitable society." Our statute of charitable uses, General Statutes, § 5081, settles this and makes it clear that in this State there is no distinction between a charitable and a religious use. This society is one of the "charitable societies" named in the residuary clause, and is entitled to share in the distribution of the residue.

The third question we are asked to answer is as to the right of the Women's Missionary Society of the Congregational Church of Stratford to share in the distribution of the residue as one of the "charitable societies" referred to in the residuary clause. The society described in the will is "The Ladies' Society of Stratford," but there was no such society known as the Ladies' Society of Stratford at the time the testatrix made her will. The Women's Missionary Society of the Congregational Church was then in existence, and the testatrix was for many years its president and much interested in it, and often stated that she intended to leave it a bequest. From these facts the identification is sufficiently clear, that the testatrix intended by this designation the society known as the "Women's Missionary Society of the Congregational Church." If the description of the legatee can be ascertained by extrinsic evidence to denote the society meant by the testator and to distinguish it from

all others, the bequest will be sustained and the surrounding circumstances may be inquired into in order to ascertain the testator's intent. *Brewster* v. *McCall's Devisees*, 15 Conn. 274, 291. This society was unincorporated, but this does not prevent its taking under the residuary clause, whether the residue consisted of real or personal property, or both. The residue in the will before us included personal property and a remainder-interest in real estate. Before the termination of the life estate the real estate was sold by order of court. The sale did not change the proceeds of sale into personal estate; it still remained, under the statute, real estate. Public Acts of 1921, Chap. 122. Our question is whether the unincorporated or voluntary association can take an absolute gift of real and personal property by will. Some of the early Connecticut cases have been thought to hold that they could not take by will real estate, but we pointed out in *American Bible Society* v. *Wetmore*, 17 Conn. 181, 188, 189, that in *Lockwood* v. *Weed*, 2 Conn. 287, the point was not raised or decided; that *Greene* v. *Dennis*, 6 Conn. 293, was an action at law, and that the remark of STORRS, J., in *Brewster* v. *McCall's Devisees*, 15 Conn. 294, was also made concerning a similar action. The *American Bible Society* v. *Wetmore, supra,* was an appeal from a decree of the Court of Probate accepting the distribution of an estate which included "the rest and remainder of my estate, both real and personal that I may be in possession of, at my decease." One half of this by the will went to two unincorporated or voluntary associations. The court, by CHURCH, J., said: "By the principles of the common law, no title can be created either by deed or devise, so as to vest a present legal interest in any person, natural or artificial, which has no legal existence. We are not now upon the question what would be the effect, legal or equitable, of a devise to

a mere monied or business association— . . . but whether a court of equity will recognize and protect the interests of public charitable associations." Citing the statute of 1684, commonly known as the statute of 1702, and now our statute of charitable uses, General Statutes, § 5081, the court says: "We think the obvious effect of this enactment would protect the devises in question, without resort to the additional authority of adjudged cases. But we believe it is a doctrine now universally admitted, by the equity courts of this country, that a devise for a public charitable purpose, shall not fail of effect, for want of a devisee then capable of taking the legal estate; and that to protect and perpetuate such charity, the legal estate will be considered, either as remaining in abeyance, or vesting in the heirs of the testator, as trustees for the persons beneficially interested. . . . To carry out these charitable testamentary grants, when they are promotive of important public and benevolent purposes, is in accordance with the enlightened and philanthropic spirit of the age. With such a spirit the jurisprudence of the country should keep pace." This case decided that a court of equity will recognize and protect the interest of public charitable associations, not incorporated, in bequests and devises intended for their benefit. The authority of this decision has remained unchallenged in this jurisdiction since its enactment. *Eccles* v. *Rhode Island Hospital Trust Co.*, 90 Conn. 592, 596, 98 Atl. 129; note in 5 Amer. L. R. 326, 330. Our statutes recognize the legislative understanding that unincorporated associations may take real or personal estate under a will. General Statutes, § 4943, provides: "The interest of any witness in any community, church, society, association or corporation, beneficially interested in any devise or bequest, shall not affect such devise or bequest." And General Statutes,

§ 4958, provides: "Within thirty days after the admission to probate of any will, containing a devise or bequest to any corporation or voluntary association," notice shall be given, etc. If an unincorporated association cannot take real and personal estate in this State by will, the General Assembly would have been unlikely to provide that a devise or bequest to such an association would not be affected by the interest of a witness in the association, or to provide for notice to it. The conclusion we reached in *American Bible Society* v. *Wetmore,* 17 Conn. 181, is supported by "the great body of American decisions." *Burbank* v. *Whitney,* 41 Mass. (24 Pick.) 146; *Burr* v. *Smith,* 7 Vt. 241; *Parker* v. *Cowell,* 16 N. H. 149; *Snider* v. *Snider,* 70 S. Car. 555, 50 S. E. 504. New York holds the contrary. Her statutes restrict gifts to charitable corporations. Our policy, as reflected by our General Assembly and by our court, has been to uphold gifts for charitable purposes and to encourage their giving; and The Women's Missionary Society of the Congregational Church is beyond controversy a charitable society.

The fourth question we are to answer is whether the gift to this society in the residuary clause is subject to the restrictions in the gift to it in clause three of the will. The bequest of $200 in clause three of the will to the Ladies' Society of Stratford, "'the interest to be used yearly to fit missionary boxes," designates a definite charitable purpose. The facts stated in paragraph fourteen of the complaint, which are admitted by all of the defendants, recites: "The fitting up of missionary boxes, that is to say, boxes containing clothing and other useful articles for the families of missionaries, is the usual mode of assisting in the support of missionaries and missionary societies." Thus explained the words "fit missionary boxes," expresses a charitable purpose with sufficient definiteness to be

carried out. *White* v. *Howard*, 38 Conn. 342, 346. The bequest of the residue is in terms absolute. This the testatrix never intended. Evidently she desired to give to this society a fund, and from its income to maintain in perpetuity the charitable purpose of "the fitting up of missionary boxes." The intention of the testatrix will best be carried out by holding that the charitable purpose described in clause three attaches to the devise and bequest to this society in the residuary clause.

The Superior Court is advised that we answer the questions reserved as follows:—

First:. The property on hand for distribution as described in paragraph nine of the complaint is a part of the residuary estate, and to be distributed among the several "charitable societies" named in clause three of the will, and for the uses and purposes therein specified.

Second: The Congregational Church Society of Trumbull, Connecticut, is included in the term "charitable societies" as used in the residuary clause, and is to share in the property to be distributed as described in paragraph nine of the complaint.

Third: The Women's Missionary Society of the Congregational Church of said Stratford is described with sufficient definiteness by the term "The Ladies' Society of Stratford," so that it may receive any portion of the residue to which it may be entitled, and is included in the term "charitable societies," and entitled to share in the distribution of the residue.

Fourth: The use of the Women's Missionary Society of the Congregational Church of Stratford is restricted to fitting out missionary boxes as provided in clause three of the will, and such use is a sufficiently definite charitable purpose to be carried out.

No costs will be taxed in this court.

In this opinion the other judges concurred.